IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DIANA M. MERCHANT              )
                              )
    v.                        )        NO. 3:09-0689
                              )
STATE OF TENNESSEE, et al.    )


To: Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered July 30, 2009 (Docket Entry No. 4), this action was referred to the

Magistrate Judge for review under 28 U.S.C. § 1915(e)(2)(B) and for case management, decision

on all pretrial, nondispositive motions and report and recommendation on all dispostiive motions

under 28 U.S.C. § 636(b)(1)(A), and to conduct any necessary proceedings under Rule 72 of the

Federal Rules of Civil Procedure.

Presently pending before the Court is the Defendants' motion to dismiss and for summary

judgment (Docket Entry No. 36), to which the Plaintiff has filed a response in opposition (Docket

Entry No. 49)[1]. For the reasons set out below, the Court recommends that the motion to dismiss be

granted and this action be dismissed.

---

[1] The Plaintiff's response also includes a motion to remand the action, to which the
Defendant did not respond but which the Court addresses herein.

# I. BACKGROUND[2]

The Plaintiff began working for the State of Tennessee in 2000 in the Department of Children's Services. In May 2007, she interviewed for a position as a Program Specialist with the Department of Intellectual Disabilities Services ("DIDS"),[3] a division within Tennessee Department of Finance and Administration, and began working for the DIDS on or about June 15, 2007. Although the Plaintiff was transferring from another state agency to the DIDS, she was considered a probationary employee during the first six months of her employment with DIDS. Her supervisor was Darlene Moghadam ("Moghadam"), who had interviewed the Plaintiff for the position.

After working for only a few days, the Plaintiff took several weeks off on approved medical leave because of a previously scheduled surgery. On August 7, 2007, she returned to work from medical leave and, at some point shortly thereafter, gave Moghadam a handwritten letter outlining her personal health information, explaining her medical problems, which include epilepsy, sleep disorders, and severe allergic reactions (asthma, hives, seizures, and migraine headaches) to mold, insects, and other environmental conditions, and suggesting possible actions which might be necessary to take in response to these medical problems. <u>See</u> Affidavit of Moghadam (Docket Entry No. 40), at Exhibit #1 (Docket Entry No. 40-1). On August 17, 2007, the Plaintiff suffered a migraine episode during a lengthy training session held in conference room 2111 of the "Stamps Building" and had to leave the session to return to her desk. She attributes the onset of the migraine

---

[2] The facts as recounted are taken from the entire record and summarized in the light most favorable to the Plaintiff.

[3] Prior to July 1, 2009, DIDS was known as the Division of Mental Retardation Services ("DMRS"). <u>See</u> Affidavit of Karen Haynes (Docket Entry No. 41), at 1 ¶ 3. Because the parties refer to the agency as DIDS, the Court shall also use that abbreviation.

to environmental contaminants and/or lack of ventilation in the room. The Plaintiff asserts that at some point during the next few days, she was called to Moghadam's office and accused of coming into work late and not indicating time deductions on her time sheets, an accusation which the Plaintiff denies. The Plaintiff also contends that Moghadam was curt and dismissive with her when she attempted to offer an explanation for the issue.

On August 21, 2007, Moghadam sent the Plaintiff an e-mail setting out Moghadam's expectations regarding the Plaintiff's job performance, which were:

1) Arrive at work by 9:00 a.m. and email me upon your arrival.

2) Call Glen Maxwell and me, when you are sick or going to be late.

3) All request to work late or to flex time must be approved by me prior to this taking place or it is not authorized.

4) Any scheduled training or other job related tasks that will make you late coming in to the office, should first be discussed and/or approved by me.

5) I expect you to accompany your assigned mentor on all visits unless I tell you differently. You are not expected to go on visits that require an overnight stay at this time. I will be assigning you to accompany other case managers on visits as well. This is a valuable learning experience that will help you to learn more about our dept. and the jobs we do.

6) Complete the Consumer Directed Supports contacts that you are currently working on and return to Glenn.

7) If you find that you have idle time, see me and I will direct you to another task.

8) All time must be reported accurately on your time sheet. Time taken and not reported for last pay period still needs to be resolved. I am talked (sic) with Rick Henderlight and Personnel on how this can be addressed.

See Affidavit of Moghadam, at Exhibit #2 (Docket Entry No. 40-2). On August 27, 2007, the Plaintiff sent to Moghadam a response e-mail, which was copied to Moghadam's immediate

supervisor and the Director of the Intake Unit, Richard Henderlight ("Henderlight"), regarding her work schedule and the issue of her arrival and departure from work. See Affidavit of Moghadam, at Exhibit #3 (Docket Entry No. 40-3). Moghadam viewed the Plaintiff's August 27th e-mail as unprofessional and insubordinate and recommended to Henderlight that the Plaintiff be terminated because she believed that the Plaintiff had problems with time, attendance, performance, and attitude, a recommendation to which Henderlight agreed. See Affidavit of Moghadam, at ¶¶ 8-9. On August 29, 2007, Moghadam met with the Plaintiff at which time she informed the Plaintiff that she was being terminated and gave her a letter, dated August 29, 2007, from the Regional Director for the Middle Tennessee Regional Office ("MTRO") of the Department of Finance and Administration stating that the Plaintiff was not being retained in the position of Residential Program Specialist effective August 29, 2007. See Affidavit of Donna Bryan (Docket Entry No. 43), at Exhibit 2 (Docket Entry No. 43-2). The Plaintiff asserts that no reason was offered for her termination and that Moghadam was rude and hostile toward her at the meeting.

The Plaintiff protested her termination by contacting the Tennessee State Employees Association and the Tennessee Department of Human Resources. She was eventually reinstated with the DIDS because state personnel rules require that probationary employees be continuously employed for at least one month prior to termination, a condition that was not met with respect to the Plaintiff prior to her termination. See Affidavit of Donna Bryan (Docket Entry No. 43), at ¶ 10.

The Plaintiff met with Henderlight, DIDS Human Resources Director 3 Karen Hayes ("Hayes"), and DIDS Human Resources Analyst 2 Donna Bryan ("Bryan") on November 1, 2007, prior to her reinstatement, and began re-employment with DIDS on November 6, 2007, under a new supervisor, Darla Goad ("Goad"). The Plaintiff met with Goad and Donna Bryant upon returning

to work, was told she was required to e-mail Bryant upon arrival to work every day, and was required to sign a job performance plan. See Affidavit of Goad (Docket Entry No. 42), at Exhibit No. 1 (Docket Entry No. 42-1). She alleges that she was also told to obtain a medical release from a physician stating that she was able to safely operate a motor vehicle, an action which the Plaintiff believed was completely unnecessary but with which she attempted to comply.

At essentially the same time as her reinstatement, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 5, 2007, protesting her earlier termination. The DIDS was notified of the Charge of Discrimination on or about November 14, 2007. See Affidavit of Bryan (Docket Entry No. 43), at ¶ 13. The Plaintiff alleges that after the EEOC Charge became public knowledge in her workplace, attitudes toward her worsened, she was accused of lying and required to present doctor's notes for any sick time taken, she was not allowed to use state vehicles or included in case review procedures, and she was told by Goad, when confronted about using annual time to take a final exam, that she could not take college courses while employed.

On January 15, 2008, the Plaintiff met with Goad, Henderlight, and Donna Bryant, was terminated from employment, and was given essentially the same termination letter that she was given upon her first termination. See Affidavit of Bryan, Exhibit 2 (Docket Entry No. 43-2). The Plaintiff alleges that no reason was offered for her termination.

Having received a right to sue letter from the EEOC, on July 28, 2009, the Plaintiff filed this civil action against the State of Tennessee, the DMRS, Richard Henderlight, Darlene Moghadam, Karen Hayes, and Darla Goad alleging that she was the victim of employment discrimination. Specifically, she alleges that she was terminated because of a perceived disability in violation of the

Americans with Disabilities Act, 42 U.S.C. §§ 12102, <u>et</u> <u>seq</u>. ("ADA") and in retaliation for filing her charge of discrimination.  <u>See</u> Complaint (Docket Entry No. 1) and Amended Complaint (Docket Entry No. 27).  The Plaintiff seeks monetary damages and injunctive relief to prevent negative references from the Defendants to any potential future employers.

## II. MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

The Defendants move for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserting that the Eleventh Amendment renders the DIDS and/or the State of Tennessee immune from any claims seeking recovery of monetary damages under Title I of the ADA and thus the Court lacks subject matter jurisdiction over these claims.  The Defendants further assert that official capacity claims against them should be dismissed for the same reason since such claims are essentially claims against the State of Tennessee.  The Defendants also argue that, to the extent that the Plaintiff brings claims against the Defendants in their individual capacities, such claims warrant dismissal because the ADA does not create personal liability against individuals.

Additionally, the Defendants contend that the Plaintiff cannot establish a claim warranting relief under the ADA based on either a theory that she was discriminated against because of a perceived disability or a theory that she was terminated in retaliation for filing a charge of discrimination and that they are entitled to summary judgment on the merits of these claims.

# III. STANDARD OF REVIEW

When a facial challenge is made questioning the sufficiency of the allegations contained in the complaint supporting subject matter jurisdiction, the Court takes the allegations in the complaint as true.  See Ohio Nat. Life Ins. Co. v. U.S., 922 F.2d 320, 325 (6th Cir. 1990).

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(c) of the Federal Rules of Civil Procedure.  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial."  Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000).  In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion."  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party.  Anderson, at 249-50.  However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving

party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting

Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary

judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant

probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559,

561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on

the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe

Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations,

speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a

well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871,

888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the

party opposing the motion must present affirmative evidence to support his or her position; a mere

"scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003)

(quoting Anderson, 477 U.S. at 252).


## IV. ANALYSIS

A. The Plaintiff's Claims

As an initial matter, clarification of the specific legal claims at issue in this action is required.

In her original complaint, the Plaintiff asserted that her action was brought under "Title VII, ADA,

and Retaliation." See Complaint (Docket Entry No. 1), at 1. By Order entered October 19, 2009

(Docket Entry No. 20), the Court granted the Defendants' motion for a more definite statement and

directed the Plaintiff to file an amended complaint clarifying, among other things: 1) in what

protected class or classes under Title VII she alleges membership; 2) whether she is asserting a claim under Title I and/or Title II of the ADA; and 3) whether her retaliation claim(s) are brought under Title VII, the ADA, or any other statute.[4]

Although the Plaintiff filed an Amended Complaint (Docket Entry No. 27), she did not clearly comply with the specific directives of the Court. While the Amended Complaint did clarify some of the underlying factual allegations, the Plaintiff nonetheless captioned her Amended Complaint as:

> Plaintiff's amended complaint in action filed under the Title VII of Americans with Disability Act for discrimination against perceived disability based on history of disability and for retaliation in filing charge of discrimination with Equal Employment Opportunity Commission.

See Docket Entry No. 27, at 1. In her Response in Opposition, the Plaintiff reiterates that her claims are brought under "Title VII of the Americans with Disabilities Act." See Docket Entry No. 49, at 2. She also asserts for the first time claims under Tennessee Code Ann. §§ 50-1-102 and 105, and under "State of Tennessee Executive Order by The Governor No. 13." Id, at 3.

The ADA does not contain a Title VII,[5] and it is unclear to what the Plaintiff is referring when she uses the language "Title VII of the Americans with Disabilities Act." Because her allegations indicate that she is not pursuing a claim under Title VII as that term is generally accepted

---

[4] The Plaintiff was also directed to clarify certain factual matters in her complaint and to attach to her amended complaint the EEOC charge or charges she made before filing the instant action. The Plaintiff has never provided the charge(s) of discrimination made to the EEOC as directed by the Court.

[5] The ADA contains five titles: Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV) and Miscellaneous Provisions (Title V).

to mean Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Court does not view the Plaintiff as having alleged any type of claim under Title VII of the Civil Rights Act of 1964.

Giving the Plaintiff's pleadings the benefit of a liberal construction because of her status as a pro se litigant, the Court construes the Plaintiff's pleadings as setting out a claim for discrimination under Title I of the ADA, which prohibits certain employers from discriminating against their employees on the basis of disability, Lowe v. Hamilton Cnty. Dept. of Job & Family Servs., 610 F.3d 321, 325 (6th Cir. 2010), and a claim for retaliation under the ADA for having opposed the alleged unlawful acts.

To the extent that the Plaintiff seeks to assert in her Response in Opposition new claims under state law, such an attempt is without merit. The Scheduling Order entered December 4, 2009 (Docket Entry No. 32), set a deadline of January 6, 2010, to amend the pleadings. Accordingly, the new assertion of state law claims is untimely. Further, even under a liberal construction, state law claims were not set out in either the original complaint or the amended complaint and, thus, the inclusion of such claims in the Response in Opposition cannot be viewed as a clarification by the Plaintiff of her original allegations and claims.

B. Subject Matter Jurisdiction and Claims for Monetary Relief

The Defendants contend that the Court lacks subject matter jurisdiction over any monetary claims brought under the ADA and these claims should be dismissed under Ruler 12(b)(1) because the State of Tennessee and the DIDS have immunity under the Eleventh Amendment from such claims. Although the Defendants' contention that subject matter jurisdiction does not exist is

misplaced, their underlying argument that Eleventh Amendment sovereign immunity exists barring the monetary claims is correct.

The United States Supreme Court has determined that states and their agencies are immune to suits brought in federal court by private individuals for monetary damages under Title I of the ADA. Board of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); Lowe, supra. The Court reasoned that Title I of the ADA exceeded Congress' constitutional authority to enforce the Equal Protection Clause of the Fourteenth Amendment and was an invalid abrogation of states' Eleventh Amendment[6] sovereign immunity. Garrett, at 374; Lowe, supra; Robinson v. University of Akron Sch. of Law, 307 F.3d 409, 411 (6th Cir. 2002). As such, the Plaintiff's claims for damages brought under the ADA against the State of Tennessee and the DIDS should be dismissed based on Eleventh Amendment immunity grounds. Official capacity claims against state employees are treated as claims against their employer and, thus, the Plaintiff's official capacity claims for monetary damages against the individually named defendants should also be dismissed under the Eleventh Amendment. See Dubuc v. Michigan Bd. of Law Exam'rs, 342 F.3d 610, 616 (6th Cir. 2003).

However, dismissal of the monetary claims based on the basis of Eleventh Amendment sovereign immunity is not a dismissal for want of subject matter jurisdiction in the strictest sense of the word because the defense can be waived. Nair v. Oakland Cnty. Comty. Mental Health Auth., 443 F.3d 469, 474-76 (6th Cir. 2006). Although the Eleventh Amendment does place a limit on the

---

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

federal court's authority to hear a claim, an Eleventh Amendment limitation "is not coextensive with the limitations on judicial power in Article III." <u>Nair</u>, 443 F.3d at 474 (quoting <u>Calderon v. Ashmus</u>, 523 U.S. 740, 745 n.2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998)). <u>See</u> <u>also</u> <u>Indiana Protection and Advocacy Servs. v. Indiana Family and Soc. Servs. Admin.</u>, 603 F.3d 365, 370 (7th Cir. 2010) (The Eleventh Amendment is unusual in that it does not strictly involve subject matter jurisdiction and is thus waivable . . . ).

The Plaintiff requests that, if the Court finds a lack of subject matter jurisdiction over all or any part of her lawsuit, any such claims should be remanded to the state court in lieu of being dismissed. <u>See</u> Plaintiff's Memorandum in Opposition and Motion to Remand (Docket Entry No. 49), at 1 and 5. This request has no merit. The instant action was filed by the Plaintiff in federal court and was not removed to this Court by the Defendants. The Plaintiff has not shown any authority for an order of remand in such a situation.


<u>C. Individual Liability under the ADA</u>

Individuals who do not independently qualify under the statutory definition of an employer may not be held personally liable under the ADA. <u>Satterfield v. Tennessee</u>, 295 F.3d 611, 616 n.4 (6th Cir 2002); <u>Sullivan v. River Valley Sch. Dist.</u>, 197 F.3d 804, 808 n.1 (6th Cir.1999), <u>cert</u>. <u>denied</u>, 530 U.S. 1262, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). <u>See</u> <u>also</u> <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 830 (11th Cir. 2007); <u>Walsh v. Nevada Dept. of Human Res.</u>, 471 F.3d 1033, 1037 (9th Cir. 2006); <u>Koslow v. Commonwealth of Pa.</u>, 302 F.3d 161, 177 (3rd Cir. 2002). The Plaintiff has not shown that any of the individuals named in this action independently qualify as an employer

under the ADA.  Accordingly, all liability claims against Defendants Henderlight, Moghadam, Haynes, and Goad in their individual capacities  should be dismissed.

## D. Injunctive Relief under Title I of the ADA

In Garrett, the Supreme Court expressly limited its holding  to claims for monetary relief, and noted that private individuals may sue for injunctive relief to enforce the standards of the ADA under the holding of  Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  Garrett, 531 U.S. at 374 n.9.

The Sixth Circuit Court of Appeals in  Ernst v. Rising, 427 F.3d 351 (6th Cir. 2005), cert. denied, 547 U.S. 1021, 126 S.Ct. 1584, 163 L.Ed.2d (2006), explained this exception as follows:

> In Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court carved out an exception to the States' constitutional immunity from suit, one that permits federal courts to enjoin state officials from the future enforcement of state legislation that violates federal law.  Under the exception, "a federal court's remedial power ... is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury."  Edelman, 415 U.S. at 677, 94 S.Ct. 1347 (citations omitted); see also Carten v. Kent State Univ., 282 F.3d 391, 395 (6th Cir. 2002).  In distinguishing between forbidden monetary relief and permissible injunctive relief, the Supreme Court has explained that "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." Papasan v. Allain, 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Id. The ancillary-effect exception, we have explained, "is a narrow one."  Kelley v. Metro. County Bd. of Educ., 836 F.2d 986, 992 (6th Cir. 1987). "The dividing line" between ancillary relief and essentially compensatory relief, we have also explained, "is whether the money or the non-monetary injunction is the primary thrust of the suit." Barton v. Summers, 293 F.3d 944, 949 (6th Cir. 2002); id. ("If the injunctive relief sought by the plaintiff is truly prospective non-monetary relief, sovereign immunity will not bar the suit simply because the state may be required to make incidental expenditures in complying with the injunction.").

427 F.3d at 367-68.

In her motion, the Plaintiff seeks prospective injunctive relief to prevent the Defendants from providing negative references to her potential future employers. The Defendants fail to specifically address the Plaintiff's claims for prospective injunctive relief. Accordingly, the Court finds that the Plaintiff's claims, to the extent that she seeks prospective injunctive relief, survive the Defendants' Eleventh Amendment immunity arguments and permit the Court to address the merits of the Plaintiff's claims of disability discrimination and retaliation.

E. Merits of the Plaintiff's ADA Claims

Title I of the ADA provides, in relevant part:

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The anti-retaliation provision of the ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a). E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and Sch., 597 F.3d 769, 776 (6th Cir. 2010).

The Plaintiff does not set forth direct evidence supporting either her claim of disability discrimination or her claim of retaliation.[7]  Accordingly, the Plaintiff must establish a prima facie case in order to raise an inference of discrimination or retaliation.  If the Plaintiff establishes a prima facie case, the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for the challenged action.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001).  If the defendants satisfy their burden, the Plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination.  Id.  Although the burdens of production shift, the ultimate burden of persuading the trier of fact that unlawful conduct has occurred remains at all times with the Plaintiff.  Burdine, 450 U.S. at 253; DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004).

To establish a prima facie claim of disability discrimination, the Plaintiff must show: (1) that she is "disabled" within the meaning of the ADA; (2) that she was qualified to perform the requirements of the job with or without reasonable accommodation; and (3) that she suffered an adverse employment decision because of the disability.  Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir.2008); Osborne v. Romark Labs., L.C., 2009 WL 3517538 (M.D.Tenn. Oct. 22, 2009) (Trauger, J.).

---

[7] Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). See also Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp., 176 F.2d 921, 926 (6th Cir. 1999).  No such evidence has been presented by the Plaintiff.

In the instant action, the Defendants concede that the Plaintiff meets the first two elements of her prima facie case. See Defendants' Memorandum (Docket Entry No. 37), at 14.[8] The Defendants argue, however, that the Plaintiff fails to meet the third element because she fails to show that she suffered discrimination solely due to her disability. Id. In support of their position, the Defendants point to evidence of workplace shortcomings on the part of the Plaintiff which the Defendants contend were the reason the Plaintiff's employment was terminated. Given the low threshold required for satisfying the prima facie case and risk of conflating analysis of the prima facie case with analysis of pretext and the ultimate question, the Court is unpersuaded by the Defendants' arguments that the Plaintiff fails to meet a prima facie case. See Jones v. Potter, 488 F.3d 397, 406 (6th Cir. 2007). Accordingly, the Court presumes, for the purposes of addressing the motion for summary judgment, that the Plaintiff satisfies her burden of showing the existence of a prima facie case on her disability discrimination claim.

To establish a prima facie case for retaliation under the ADA, the Plaintiff must demonstrate: (1) she engaged in a protected activity; (2) the defendant knew of her exercise of her protected activity; (3) the defendant, thereafter, took an adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) a casual link exists between the protected activity and the adverse employment action or harassment. Johnson v. Cleveland City Sch. Dist., 344 Fed.Appx. 104, 113, 2009 WL 2610833 (6th Cir. Aug. 25, 2009); Clark v. City of Dublin, Ohio,

---

[8] Although the Defendants briefly refer to consideration of an employer's attendance requirements as a factor in determining whether a plaintiff meets the second prong of the prima facie case, see Docket Entry No. 37, at 14-15, given the Defendants' prior concession in its Memorandum that the Plaintiff meets the first two elements of the prima facie case and the brevity of their reference, the Court does not view the Defendants as having raised an actual argument that the Plaintiff is not an otherwise qualified individual for the purposes of the second element of the prima facie case.

178 Fed.Appx. 522, 525, 2006 WL 1133577 (6th Cir. April 27, 2006); <u>Kuriatnyk v. Township of Bazetta, Ohio</u>, 93 Fed.Appx. 683, 686, 2004 WL 187526 (6th Cir. Jan. 27, 2004).

The Defendants challenge the fourth element of the <u>prima facie</u> case, arguing that the Plaintiff cannot show that a causal link existed between her termination and the filing of her EEOC charge. <u>See</u> Memorandum (Docket Entry No. 37), at 17-18). The Court does not agree. The Plaintiff asserts that she heard Goad, her supervisor and the person who ultimately recommended her termination from employment, disclosing to other supervisors and co-workers that the Plaintiff had filed an EEOC charge of discrimination. <u>See</u> Docket Entry No. 50-1; Complaint, at 3. Given the low threshold required to satisfy a <u>prima facie</u> case, the Court finds that this evidence raises at least a genuine question of material fact on this issue sufficient to deny summary judgment on this ground.

Upon the Plaintiff's showing of a <u>prima facie</u> case for both her disability discrimination and her retaliation claims, the burden shifts to the Defendants to articulate a "legitimate, nondiscriminatory reason" for the decision to terminate the Plaintiff's employment. <u>Burdine</u>, 450 U.S. at 253. The Defendants "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Id</u>. at 257.

The Defendants have set forth admissible evidence in the form of affidavit statements that the Plaintiff was terminated from her employment because her direct supervisors believed that she was not meeting the job requirements and expectations for her position because of her problems with time, attendance, performance or assigned tasks, and attitude. <u>See</u> Affidavit of Moghadam (Docket Entry No. 40), at ¶ 9; Affidavit of Goad (Docket Entry No. 42), at ¶¶ 4-5. This explanation is

facially legitimate and non-discriminatory and satisfies the Defendants' burden to articulate a reason for the termination.

At this point, to succeed on her claims, the Plaintiff must demonstrate that this proffered reason is not credible and was pretext for disability discrimination or retaliation. See Jones v. Potter, 488 F.3d 397, 406 (6th Cir. 2007). Pretext is usually established by demonstrating "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003) (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084-85 (6th Cir. 1994). The Plaintiff may also set forth evidence showing that the Defendants' decision to terminate her employment was so unreasonable as to give rise to an inference of pretext. Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 268 (6th Cir. 2010). Ultimately, the Plaintiff must set forth admissible evidence from which a jury could reasonably reject the Defendants' explanation for the decision to terminate the Plaintiff's employment. Manzer, 29 F.3d at 1083.

As an initial matter, Court notes that the response in opposition filed by the Plaintiff, like that filed by many pro se plaintiffs, is somewhat difficult to follow and does not address the specific legal issues raised by the Defendants regarding the underlying merits of her ADA and retaliation claims. Further, the Plaintiff did not file a specific response to the Defendants' Statement of Undisputed Facts as required by Local Rule 56.01(c)[9] and, although she filed with the Court a copy

_____

[9] In her response, the Plaintiff states that she "disputes most" of the Defendants' Statements of Undisputed Facts and that "there exist significant and relevant discrepancies in accounts of events including false claims for which there is either blatantly false, incorrect and or misleading statements." See Docket Entry No. 49, at 5. This type of generalized and conclusory response, however, fails to comply with Local Rule 56.01(c) and fails to show the specific evidentiary support

of her complete responses to the Defendants' interrogatories, see Docket Entry Nos. 50, 50-1, 35, 35-1, and 35-2, she has not supported her response to the motion for summary judgment with reference to any particular items of evidence nor shown why she believes a genuine issue of material facts exists based upon the evidence before the Court. It is not the Court's duty to sift through the record to find facts or arguments which support the Plaintiff's case. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). It is the Plaintiff's responsibility to "identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." Amini v. Oberlin Coll., 440 F.3d 350, 357 (6th Cir. 2006). The Plaintiff also fails to support her response with her own affidavit or with affidavits or sworn statements from any other individual. Finally, to the extent that the Plaintiff appears to suggest that other evidence exists which would support her claims but which is not before the Court, see Docket Entry No. 49 at 5, ¶¶ 10-11, the burden is on the Plaintiff to support her own claims when challenged by a motion for summary judgment.

Despite these shortcomings, the Court has reviewed the entire record in this action in order to ensure that the pro se Plaintiff's claims are not dismissed merely because of technical shortcomings. After review of the record in this action, the Court finds that there is simply insufficient evidence upon which a reasonable jury could find that the Defendants' proffered reason for terminating the Plaintiff's employment was a pretext for either disability discrimination or retaliation.

The Plaintiff has not raised a pretext challenge via any of the three specific Manzer avenues for showing pretext. See Response in Opposition (Docket Entry No. 49). Nonetheless, based upon

for the Plaintiff's statements.

the evidence before the Court, such a challenge would be meritless. The Plaintiff has not disputed that she was often late arriving for work and that her work arrival and attendance issues were a specific point of emphasis for her supervisors. Further, it is undisputed that she sent the August 27, 2007, e-mail to Moghadam and Henderlight, which they viewed as unprofessional and insubordinate. It is further undisputed that she was a probationary employee while at the DIDS. To the extent that she asserts that other DIDS employees also had attendance or time issues, she has not set forth any specific evidence supporting this assertion or, more importantly, any evidence showing that a probationary employee like herself had attendance or time issues yet retained his or her employment.

Although the Plaintiff disputes that her overall job performance was deficient to the point that it warranted her termination, her subjective belief is not sufficient to show pretext. A plaintiff's subjective belief that she was discriminated against or retaliated against is simply insufficient to establish a claim for trial. See Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 491 (6th Cir. 2006) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 584-585 (6th Cir. 1992)).

The ultimate question of whether or not the Plaintiff was adequately performing her job is not the critical question. When an employer has an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on particularized facts that were before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it were erroneous. See Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 559 (6th Cir. 2009); Allen v. Highlands Hosp. Corp., 545 F.3d 387, 398 (6th Cir. 2008); Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001). It is simply not within the purview of the Court to generally review the correctness of employment and management practices

or decisions made by the Defendants.  See Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir.

2000).  See also Manzer, 29 F.3d at 1084-85.  The soundness of an employer's decision is not a

matter of concern so long as the employer has not made a decision based on grounds forbidden by

federal law.  See Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006).

While the Plaintiff has set forth more than a scintilla of evidence supporting her claims,[10] in

the end, the Plaintiff simply falls short of producing sufficient evidence from which a jury could

reasonably reject the Defendants' explanation of why her employment was terminated and find that

she was terminated for an unlawful reason.  Accordingly, the Defendants are entitled to summary

judgment in their  favor.  See Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 526 (6th Cir.

2008); Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001).


## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the Defendants' Motion

to Dismiss and for Summary Judgment (Docket Entry No. 36) be GRANTED and that the Plaintiff's

claims be DISMISSED WITH PREJUDICE[11] and that the Plaintiff's motion (Docket Entry No. 49)

to remand be DENIED.

---

[10] The Court views the Plaintiff's evidence regarding the Defendants' purported desire to seek some type of release authorizing her to drive a state vehicle as rising above the scintilla threshold regarding her disability discrimination claim.

[11] The Sixth Circuit in Ernst, a case dealing with review of a dismissal on Eleventh Amendment immunity grounds, noted that "dismissals for lack of jurisdiction should generally be made without prejudice."  427 F.3d at 367.  However, the posture of the instant case warrants dismissal with prejudice because the Court, in addressing the Plaintiff's claims for prospective injunctive relief, has reviewed the record and addressed the Plaintiff's underlying claims on the merits.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


JULIET GRIFFIN
United States Magistrate Judge